UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
GREGORY HILTON,                                                   Civ. Act. No: 25-cv-5548

       Plaintiff,

                                            ***COMPLAINT***

    - against –

CARLOS SANCHEZ ALCAZAR,

       Defendant.
-----------------------------------------------------------X

       Plaintiff, GREGORY HILTON, by and through his attorneys, The Linden Law Group, P.C., complaining of Defendant CARLOS SANCHEZ ALCAZAR hereby allege as follows:

## PARTIES

1. Plaintiff GREGORY HILTON is a natural person over the age of eighteen and is a citizen of the State, County and City of New York.

2. Defendant, CARLOS SANCHEZ ALCAZAR is a natural person over the age of eighteen and is a citizen of the State of Ohio.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this Action under 28 U.S.C. § 1332 because of complete diversity of citizenship between Plaintiff and Defendant and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. This Court has personal jurisdiction over Defendant under New York CPLR §302. Defendant has sufficient minimum contacts with New York. He has purposefully directed substantial activities towards consumers New York i.e. transacting business (sales, promotion and marketing of his product). He has committed a tortious act within the

state, or committed a tortious act outside the state causing injury to person or property within New York, while regularly doing or soliciting business in New York or deriving substantial revenue from goods used in the state.

## FACTS

6. On January 24, 2023, Plaintiff filed a U.S. patent application relating to proprietary sensor technology that he developed for use in electric rideable devices[1] (the "Patent Application"), specifically for footpad systems used in motorized boards (the "Product"). The unique technology is a system and method of replacing a worn foot sensor array on a motorized board with a new sensor array.

7. Upon information and belief, Defendant was and is in the same business selling a different version of the same product.

8. Until recently, both parties were active members of a community on the popular social media platform known as Facebook where they discussed their products with numerous third-parties interested in the products and their development. A good reputation in this particular Facebook community was and is critical to the promotion and marketing of the Plaintiff's product.

9. Within a two-week period of Plaintiff's filing of his patent application, the parties had a discussion that Plaintiff filed said application and that any use by Defendant of his prior art would potentially conflict with Plaintiff's ultimate patent and entitle him to royalties.

10. On or around February 10, 2023, Plaintiff specifically alerted Defendant that his designs would potentially infringe on Plaintiff's intellectual property.

---

[1] Such as skateboards, wheel boards, hover boards, scooters, water foil boards, motorized paddleboards, and skyboards.

11. From the period February 10, 2023 to August, 2023, Defendant repeatedly requested to view Plaintiff's unpublished patent application, stating that he respected his intellectual property rights and intended to discuss Plaintiff granting him a license for the sale of the sensor. Plaintiff refused, citing the confidentiality of the filed, but as yet unpublished, application.

12. On or around November 14, 2024, the Patent Application was published under U.S. Patent Publication No. 2024/0375509. Plaintiff promptly sent a copy of the published Patent Application via FedEx to Defendant at the same address where he had previously received a prototype sensor. Plaintiff also sent a copy of the publication to two distributors with known business ties to Defendant.

13. Upon information and belief, in or about November, 2024, Defendant began marketing and selling sensor products under the brand "Stoked Stock," which specifically incorporated proprietary features of Plaintiff's Product.

14. On or about November 28, 2024, Defendant launched a "GoFundMe fundraiser" titled "Support StokedStock's Fight Against Unfair Claims," falsely stating that Plaintiff was bullying and harassing him. The fundraiser featured images of potential infringing products and offered them as raffle prizes to donors. Defendant's fundraising efforts in this vein was his effort to use Plaintiff's name specifically to raise capital to be used against Plaintiff. The GoFundMe campaign's website is www.gofundme.com/f/support-stokedstocks-fight-against-unfair-claims.

15. In specific and public Facebook community posts and podcast appearances, Defendant directly referenced Plaintiff and described him as a bad actor claiming he would seek to "shut him down." He portrayed Plaintiff's Intellectual Property ("IP") enforcement

efforts as unjust and malicious. Defendant claimed publicly that Plaintiff was actually stealing "his idea" touting "his prior art."

16. On November 27, 2024, Defendant wrote that the sensor he was selling was "similar" to the one for which Plaintiff applied, and stated that the two had discussed the opportunity to grant a license for the IP—a proposal Defendant declined.

17. On November 27, 2024 in an effort to extort a reduced license fee, Defendant bragged that he was offered said reduced license fee if, in exchange, he removed the social media posts and stopped selling the potentially infringing sensor. Defendant refused. Instead, he continued soliciting donations and publicly disparaged Plaintiff's good name in the specific Facebook community.

18. In a November, 2024 GoFundMe update, Defendant stated that Plaintiff's "V5 sensor" was being sold through his brand. Moreover, Defendant falsely denied he received the Publication Notice of Plaintiff's pending patent application. Defendant actually received the Notice on or around November 16, 2024.

19. In his GoFundMe post, Defendant further claimed he had been developing a similar sensor since late 2022, despite the fact that Plaintiff demonstrated a working prototype only six days later—undermining any credible assertion of Defendant's independent invention or prior art.

20. Defendant's statements in the community and on GoFundMe triggered a massive wave of Facebook community backlash against Plaintiff which directly led to a *more than 80% drop in Plaintiff's revenue* on the very day Defendant's disparaging posts went live.

21. To date and continuing, Defendant's social media and crowdfunding activity remain publicly accessible and continue to spread misinformation about Plaintiff's patent and

4

character, causing ongoing reputational and financial harm. At various other points in time, and in addition to disparaging Plaintiff's personal name and reputation, Defendant subsequently changed his attacks to focus on Plaintiff's business Exile Extreme Enterprises, LLC.

## History of Public Statements and Communications

22. In a series of written communications spanning approximately September 2022 to November, 2024 (below), Defendant Carlos Alcazar admitted on multiple occasions and in unequivocal terms that he was going to use Plaintiff's developed sensor technology for footpad systems used in motorized boards. As noted above, the parties engaged in limited discussions over a license for Defendant's use of the Product.

23. On or about December 15, 2022, Defendant stated: *"Seriously, as long as the royalty or licensing is not something ludicrous and I am infringing on your patent, my intention is to work something out."* This post constituted a clear and knowing acknowledgment of Plaintiff's rights.

24. Mr. Alcazar further indicated his willingness to enter into a licensing agreement, stating: *"My goal is not to fight you either. It's a waste of time and resources. So let me know what you're thinking as far as terms and royalties."* He then provided his personal contact information and referenced his ongoing commercial sales volume.

25. Throughout late 2022 and 2023, Defendant disclosed certain sensitive, proprietary information to Plaintiff regarding packaging, product specifications, sensor structure, and market strategy.

26. Despite these disclosures and Defendant's express assurances that he would not share or misuse Plaintiff's information, he stated, *"Show away man, won't share anything"*—he

proceeded to promote and sell a product that adopted design elements of Plaintiff's proprietary system.

27. Defendant openly described using foam layers, button-style hex structures, and unique sensor zoning strategies in his product—technical features identical or substantially similar to those in Plaintiff's applied patent system. In one conversation, Plaintiff stated: *"The way I get around FM is I have material difference in product construction."* FM references the company "Future Motion" who manufactures and sells the Onewheel boards themselves. This statement was Plaintiff's express acknowledgement that in fact, it was Plaintiff who constructed around FM product. Defendant then copied this construction, received a Cease and Desist letter as to that copying, and then redesigned the shape of his product, despite said warning.

28. On other social media, in various "Discord" channels in highly public fashion, Defendant demanded that Plaintiff reveal his patent application to the community.

29. In other conversations, Defendant suggested the parties remove references to "quality" and "reliability" in exchange for suppressing a discussion thread—a bad-faith tactic by Defendant intended to avoid Plaintiff qualifying his own product which would have the effect of disparaging Defendant's by contrast.

30. In a final act of misrepresentation, Defendant claimed in a podcast and elsewhere that he valued collaboration and downplayed the conflict, stating: *"The market is certainly large enough for both of us."* Yet, he continued to use Plaintiff's intellectual property to build and sell his competing product all the while attempting to retroactively justify the conduct as cooperative rather than potentially infringing.

31. Taken together, Defendant's admissions in conversations and posts, clear disparaging remarks about Plaintiff's product and character, unauthorized use of proprietary information after notice, and continued commercial exploitation of Plaintiff's patented technology constitute willful disparagement, threats of infringement, misappropriation, and unfair competition.

32. Directly due to the Defendant's ongoing campaign to damage Plaintiff personal and business reputations in this unique community, and to the consuming public in general, Plaintiff's business has suffered substantial financial loss.

33. Upon information and belief, Plaintiff estimates that there are, to date, approximately 700,000 Onewheel boards out in the market. This is the total potential market for the parties' replacement sensors.

34. Even if Plaintiff were to assume an ultra-conservative 2% market capture for this market, that amount of lost revenue from the effect of Defendants' campaign of disparagement against Plaintiff would amount to damages of over $1.100,000. There are other communities that would require Plaintiff's unique replacement sensor that would also view Defendant's onslaught of comments regarding Plaintiff, and whom Plaintiff would lose as customers.

### AS AND FOR A FIRST CAUSE OF ACTION
### Business Disparagement/Injurious Falsehood

35. Plaintiff repeats and re-alleges each and every allegation made in the paragraphs above and incorporates same herein as if fully set forth.

36. Defendant made the above false and injurious statements regarding the quality of Plaintiff's goods or services.

37. Defendant's utterance and/or publication of statements to third-parties about Plaintiff and his business were made with malice to denigrate the quality of Plaintiff's goods or services.

38. Defendant's false and disparaging statements about Plaintiff were intended to induce, and in fact did induce multiple third-parties to refrain from dealing with Plaintiff or otherwise deprived him of substantial economic advantage.

39. As a result of Defendant's conduct, the Plaintiff suffered special damages.

**AS AND FOR A SECOND CAUSE OF ACTION**

*Tortious Interference with Contract*

40. Plaintiff repeats and realleges each and every allegation above and incorporates same herein.

41. Plaintiff had been attempting to negotiate contractual/business relationships with multiple third-parties for the purchase of Plaintiff's product, but Defendant's conduct described above substantially interfered with those discussions.

42. Defendant was aware of the said contractual/business relationships.

43. Defendant, as set forth above, intentionally interfered with Plaintiff's multiple potential contractual/business relationships, without justification therefor.

44. As a consequence of Defendant's wrongful actions, Plaintiff is entitled to monetary damages.

**AS AND FOR A THIRD CAUSE OF ACTION**

*Tortious Interference with Prospective Economic Advantage*

45. Plaintiff repeats and realleges each and every allegation above and incorporates same herein.

46. Plaintiff had attempted to negotiate valid contractual/business relationships with multiple third-parties for the purchase of Plaintiff's product.

47. Defendant was aware of the said contractual/business relationships.

48. Defendant, as set forth above, intentionally interfered with those business relationships with Plaintiff.

49. Defendant acted with the sole purpose of harming Plaintiff or used dishonest, unfair or improper means to so interfere.

50. As a consequence of the Defendant's wrongful actions, Plaintiffs suffered injury to those business relations and is entitled to monetary damages.

### *AS AND FOR A FOURTH CAUSE OF ACTION*
### *Defamation*

51. Plaintiff repeats, realleges, and fully incorporates each of the allegations in the above paragraphs.

52. As alleged above, Defendant continually made written or spoken defamatory statements as to basic integrity of and concerning the Plaintiff.

53. Said statements were published by Defendant to third party(ies), which directly and/or proximately led to Plaintiff's injury.

54. Defendant's statements were false and defamatory.

55. As a result of Defendant's statements above, Plaintiff suffered special damages or in the alternative, Defendant is *per se* liable for Plaintiff's injury.

## *AS AND FOR A FIFTH CAUSE OF ACTION*

### *Unfair Competition*

56. Plaintiff repeats, realleges, and fully incorporates each of the allegations in the above paragraphs.

57. Defendant used certain proprietary and other information he acquired from Plaintiff.

58. The identities of or information used was not readily ascertainable outside of Plaintiff's business.

59. Defendant's use of the information was the proximate cause of Plaintiff's losses;

60. Plaintiff suffered money damages as a result of Defendant's unfair competition.

## *AS AND FOR AN SIXTH CAUSE OF ACTION*

### *Declaratory Judgment/Injunction*

61. Plaintiff repeats, realleges, and fully incorporates each of the allegations in the above paragraphs;

62. Defendant's conduct continues unabated and continues to significantly adversely affect Plaintiff's business and personal reputation;

63. An actual and justiciable controversy exists as between the parties.

64. An injunction and declaratory judgment is necessary in clarifying or settling the legal issues herein set forth and would finalize the controversy and offer relief to Plaintiff.

65. The harm resulting from Defendant's intentional conduct above and in the future will continue to result in irreparable harm to Plaintiff.

66. Plaintiff has set forth a basis to determine that he will likely succeed on the merits related to this action.

67. The balance of equities weighs in favor of the granting Plaintiff declaratory and/or injunctive relief.

68. Defendant should be enjoined from engaging in any further or prospective damage and/or disturbance of Plaintiff's business, his person and the use thereof.

**WHEREFORE**, Plaintiffs demand judgment against the Defendants for damages as follows:

    (a) Actual, compensatory, consequential and incidental damages in an amount to exceed ONE MILLION DOLLARS ($1,000,000.00) with an exact amount to be determined at trial;

    (b) A Permanent Injunction enjoining Defendant from directly or indirectly publishing any statement as to Plaintiff' personally or to his business in the future;

    (c) Any such other and further relief the Court deems appropriate.

Dated: New York, New York
       July 3, 2025

                        **THE LINDEN LAW GROUP, P.C.**

                        *Jeffrey Benjamin*

                        By: Jeffrey Benjamin, Esq.
                        Attorneys for Plaintiff
                        250 Park Avenue, 7th Floor
                        New York, New York 10177
                        (212) 655-9536