**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GREGORY HILTON,

                        Plaintiff,                                      Case No. 25-CV-5548(AS)

        v.

CARLOS SANCHEZ ALCAZAR,

                        Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND FOR AWARD OF ATTORNEYS' FEES AND COSTS PURSUANT TO NEW YORK'S ANTI-SLAPP LAW**

**MELISSA YANG PLLC**
Melissa Yang
136 Madison Ave., 6th Fl.
New York, New York 10016
(646) 516-9529

*Attorneys for Defendant Carlos
Sanchez Alcazar*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT .......................................................................................................................... 5

  I.    THE COURT LACKS PERSONAL JURISDICTION OVER ALCAZAR ...................... 5

      A.  Allegations Premised Upon Alcazar's Corporate Capacity Do Not Confer
           Jurisdiction Over Alcazar in His Personal Capacity ................................................... 6

      B.  Hilton Fails to Allege Jurisdiction Based on New York's Long-Arm Statute .......... 7

           i.    The Complaint Lacks Any Factual Allegation That Alcazar Transacted
                Business in New York ........................................................................................ 7

           ii.   The Complaint Fails to Plead Any Factual Allegation That Alcazar
                Committed a Tort in New York ........................................................................ 8

           iii.  The Complaint Fails to Plead any Tort Committed Outside of New York
                That Caused Injury in New York ...................................................................... 9

  II.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM
      FOR RELIEF .................................................................................................................. 10

      A.  Hilton Fails to State an Injurious Falsehood Claim (Count I) ................................. 11

           i.    Hilton Fails to Allege a Knowingly False Statement of Fact ..................... 11

           ii.   Hilton Fails to Allege Statements Directed at the Quality of a
                Business's Goods or Services ........................................................................... 13

           iii.  Hilton Fails to Allege Special Damages with Particularity ........................ 14

      B.  Hilton Fails to State a Claim for Defamation (Count IV) ........................................ 15

      C.  Hilton Fails to State a Tortious Interference with a Contract Claim (Count II) ...... 19

      D.  Hilton Fails to State a Tortious Interference with a Prospective Economic
            Advantage Claim (Count III) ..................................................................................... 20

           i.    The Complaint Fails to Identify a Specific Prospective Contract or
                Relationship with Which Alcazar Has Allegedly Interfered ...................... 20

           ii.   Hilton Fails to Allege Wrongful Means or Sole Motivation ..................... 22

      E.  Hilton Fails to State a Claim for Unfair Competition (Count V) ............................ 23

      F.  Hilton Fails to State a Claim for Declaratory Judgment/Injunction (Count VI) ...... 25

  III.  DEFENDANT IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER
      NEW YORK'S ANTI-SLAPP LAW .............................................................................. 26

CONCLUSION ....................................................................................................................... 28

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*16 Casa Duse, LLC v. Merkin,*
  791 F.3d 247 (2d Cir. 2015)....................................................................................... 23

*Adamou v. Cnty. of Spotsylvania, Va.,*
  No. 12-CV-07789, 2016 WL 1064608 (S.D.N.Y. March 14, 2016)................................... 9, 10

*Aristocrat Plastic Surgery, P.C. v. Silva,*
  206 A.D.3d 26 (N.Y. App. Div. 2022).......................................................................... 26, 27

*Avant Graphics Ltd. v. United Reprographics, Inc.,*
  252 A.D.2d 462 (N.Y. App. Div. 1998).......................................................................... 19

*Banco Popular N. Am. v. Lieberman,*
  75 A.D.3d 460 (N.Y. App. Div. 2010)........................................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................................................................. 10

*Bensusan Rest. Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997).................................................................................... 8, 9

*Best Van Lines, Inc. v. Walker,*
  490 F.3d 239 (2d Cir. 2007).................................................................................... 9, 10

*Biro v. Conde Nast,*
  883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................................. 15, 16, 18

*Bobal v. Rensselaer Polytechnic Inst.,*
  916 F.2d 759 (2d Cir. 1990)...................................................................................... 14

*Bobulinski v. Tarlov,*
  758 F. Supp. 3d 166 (S.D.N.Y. 2024)........................................................................... 27

*Bus. Networks of N.Y. v. Complete Network Sols.,*
  265 A.D.2d 194 (N.Y. App. Div. 1999).......................................................................... 20

*Butler v. Ratner,*
  210 A.D.2d 691 (N.Y. App. Div. 1994).......................................................................... 19

*Carey v. Carey,*
  74 Misc.3d 1214(A), 2022 WL 571412 (N.Y. Sup. Ct. 2022)............................................ 13

*Carson Optical Inc. v. eBay Inc.,*
  202 F. Supp. 3d 247 (E.D.N.Y. 2016)........................................................................... 24

*Carvel Corp. v. Noonan,*
  3 N.Y.3d 182 (N.Y. 2004)................................................................................. 20, 21, 22

*CDC Newburgh Inc. v. STM Bags, LLC,*
  692 F.Supp.3d 205 (S.D.N.Y. 2023)............................................................................ 13

*Celle v. Filipino Reporter Enters. Inc.,*
  209 F.3d 163 (2d Cir. 2000)...................................................................................... 15

*Com. Data Servers, Inc. v. Int'l Bus. Machs. Corp.,*
  166 F. Supp. 2d 891 (S.D.N.Y. 2001)........................................................................... 21

*Data Broadcasting Corp. v. Tele-Communications, Inc.*,
No. 92-CV-4840, 1992 WL 350624 (S.D.N.Y. Nov. 19, 1992) .............................................. 24

*DeMasi v. Benefico*,
567 F. Supp. 2d 449 (S.D.N.Y. 2008) ......................................................................................... 22

*Dessert Beauty, Inc. v. Fox*,
568 F. Supp. 2d 416 (S.D.N.Y. 2008) ......................................................................................... 21

*DiSanto v. Forsyth*,
258 A.D.2d 497 (N.Y. App. Div. 1999) .............................................................................. 11, 14

*Djurdjevich v. Flat Rater Movers, Ltd.*,
No. 17-cv-261, 2018 WL 1478132 (S.D.N.Y. March 23, 2018) .............................................. 17

*Drug Rsch. Corp. v. Curtis Publ'g Co.*,
7 N.Y.2d 435 (N.Y. 1960) ......................................................................................................... 14

*E&E Co., Ltd. v London Luxury, LLC*,
571 F. Supp. 3d 64 (S.D.N.Y. 2021) ......................................................................................... 25

*Espire Ads LLC v. TAPP Influencers Corp.*,
655 F. Supp. 3d 223 (S.D.N.Y. 2023) ....................................................................................... 13

*ESPN, Inc. v. Quiksilver, Inc.*,
586 F. Supp. 2d 219 (S.D.N.Y. 2008) ....................................................................................... 24

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
314 F.3d 48 (2d Cir. 2002) ................................................................................................. 14, 15

*Ferring B.V. v. Allergan, Inc.*,
4 F. Supp. 3d 612 (S.D.N.Y. 2014) ........................................................................................... 24

*Gillespie v. Kling*,
217 A.D.3d 566 (N.Y. App. Div. 2023) ..................................................................................... 27

*Great Wall Med. P.C. v. Levine*,
74 Misc.3d 1224(A) (N.Y. Sup. Ct. March 8, 2022) ................................................................ 27

*Gross v. New York Times Co.*,
82 N.Y.2d 146 (N.Y. 1993) ................................................................................................. 12, 17

*GS Plasticos Limitada v. Bureau Veritas*,
88 A.D.3d 510 (N.Y. App. Div. 2011) ....................................................................................... 20

*Guard-Life Corp. v. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (N.Y. 1980) ....................................................................................................... 20

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006) ....................................................................................... 13

*Herman & Beinin v. Greenhaus*,
258 A.D.2d 260 (N.Y. App. Div. 1999) ..................................................................................... 19

*In re Methyl Tertiary Butyl Ether (MTBE) Products*,
457 F. Supp. 2d 455 (S.D.N.Y. 2006) ....................................................................................... 26

*Iottie Inc. v. HSM Co.*,
No. 25-CV-2642, 2025 WL 1905814 (S.D.N.Y. July 9, 2025). .............................................. 11

*Isaly v. Garde*,
83 Misc.3d 379 (N.Y. Sup. Ct. 2024) ....................................................................................... 28

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995) ................................................................................. 23, 25

*Jonas v. Estate of Leven*,
  116 F. Supp. 3d 314 (S.D.N.Y. 2015) ................................................................... 5, 6

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) ..................................................................................... 10

*Kforce, Inc. v. Alden Personnel, Inc.*,
  288 F.Supp.2d 513 (S.D.N.Y. 2003) ......................................................................... 18

*Laufer v. Ostrow*,
  55 N.Y.2d 305 (N.Y. 1982) ......................................................................................... 6

*Legros v. Irving*,
  38 A.D.2d 53 (N.Y. App. Div. 1971) ......................................................................... 10

*Lesesne v. Lesesne*,
  292 A.D.2d 507 (N.Y. App. Div. 2002) ..................................................................... 17

*Liaros v. Vallant*,
  No. 93-CV-2170(CSH), 1996 WL 88559 (S.D.N.Y. March 1, 1996) ........................ 8

*Maione v. McDonald*,
  No. 18-CV-7452, 2024 WL 4289886 (S.D.N.Y. Sept. 24, 2024) ............................. 25

*Mann v. Abel*,
  10 N.Y.3d 271 (N.Y. 2008) ....................................................................................... 11

*McGill v. Parker*,
  179 A.D.2d 98 (N.Y. App. Div. 1992) ....................................................................... 21

*McHenry v. Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................................................................... 10

*Mount v. Ormand*,
  No. 91-CV-125, 1991 WL 191228 (S.D.N.Y. Sept. 18, 1991) ................................. 13

*Moussaoui v. Bank of Beirut and the Arab Countries*,
  No. 23-CV-7332, 2024 WL 4615732 (2d Cir. Oct. 30, 2024) ................................... 5

*NBT Bancorp v. Fleet/Norstar Fin. Grp.*,
  87 N.Y.2d 614 (N.Y. 1996) ....................................................................................... 22

*Optanix, Inc. v. Alorica Inc.*,
  No. 20-cv-9660, 2021 WL 2810060 (S.D.N.Y. July 6, 2021) ................................... 25

*Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*,
  No. 13-CV-1797, 2013 WL 6503525 (S.D.N.Y. Dec. 9, 2013) ................................... 7

*Overseas Media, Inc. v. Skvortsov*,
  407 F.Supp.2d 563 (S.D.N.Y. 2006) ........................................................................... 9

*Paraco Gas Corp. v. Ion Bank*,
  No. 20-CV-4971, 2021 WL 2810062 (S.D.N.Y. July 6, 2021) ................................... 7

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
  609 F.3d 30 (2d Cir. 2010) ......................................................................................... 5

*Plasticware, LLC v. Flint Hills Res., LP*,
  852 F. Supp. 2d 398 (S.D.N.Y. 2012) ....................................................................... 21

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
  813 F. Supp. 2d 489 (S.D.N.Y. 2011) ................................................................ 18

*Qureshi v. St. Barnabas Hosp. Ctr.*,
  430 F. Supp. 2d 279 (S.D.N.Y. 2006) ................................................................ 12

*Reilly v. Natwest Markets Grp. Inc.*,
  181 F.3d 253 (2d Cir. 1999) .............................................................................. 17

*Riddell Sports, Inc. v. Brooks*,
  872 F. Supp. 73 (S.D.N.Y. 1995) ...................................................................... 14

*Rinaldi v. Holt, Rinehart & Winston*,
  42 N.Y.2d 369 (N.Y. 1977) ............................................................................... 11

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
  86 A.D.3d 32 (N.Y. App. Div. 2011) ................................................................ 12

*Seneca Ins. Co., Inc. v. Boss*,
  256 A.D.2d 175 (N.Y. App. Div. 1998) .............................................................. 6

*Sharp v. Bar Fluid LLC*,
  237 A.D.3d 628 (N.Y. App. Div. 2025) ............................................................ 27

*Shaw v. Time-Life Records*,
  38 N.Y.2d 201 (N.Y.1975) ................................................................................ 24

*Shift Markets Grp., Inc. v. Alkemi Al Inc.*,
  No. 23-CV-03504, 2024 WL 4337451 (S.D.N.Y. Sept. 27, 2024) .................. 10

*Snyder v. Sony Music Entm't*,
  252 A.D.2d 294 (N.Y. App. Div. 1999) ...................................................... 20, 22

*SRW Assocs. v. Bellport Beach Prop. Owners*,
  129 A.D.2d 328 (N.Y. App. Div. 1987) ............................................................ 15

*Stevens v. Skolnik*,
  223 A.D.3d 580 (N.Y. App. Div. 2024) ............................................................ 22

*Stonebridge Capital, LLC v. Nomura Int'l PLC*,
  24 Misc.3d 1218(A) (N.Y. Sup. Ct. July 6, 2009) ........................................... 12

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010) ................................................................ 9

*Tang Capital Partners, LP v. BRC Inc.*,
  661 F. Supp. 3d 48 (S.D.N.Y. 2023) ................................................................. 25

*Thai v. Cayre Grp., Ltd.*,
  726 F. Supp. 2d 323 (S.D.N.Y. 2010) ........................................................ 16, 18

*Versaci v. Richie*,
  30 A.D.3d 648 (N.Y. App. Div. 2006) .............................................................. 12

*Vigoda v. DCA Prods. Plus*,
  293 A.D.2d 265 (N.Y. App. Div. 2002) ............................................................ 15

*Vitro S.A.B. de C.V. v. Aurelius Capital Mgmt., L.P.*,
  99 A.D.3d 564 (N.Y. App. Div. 2012) .............................................................. 11

*Volvo N.A. Corp. v. Men's Int'l Pro. Tennis Council*,
  857 F.2d 55 (2d Cir. 1988) ................................................................................ 24

*Warren v. eBay, Inc.*,
　No. 22-CV-3524, 2024 WL 662594 (S.D.N.Y. Jan. 8, 2024) ................................... 7
*White Plains Coat & Apron Co. v. Cintas Corp.*,
　8 N.Y.3d 422 (N.Y. 2007) .................................................................................. 19
*Williams v. Buffalo Public Schs.*,
　758 F. App'x 59 (2d Cir. Dec. 12, 2008) ............................................................. 12

## STATUTES

CPLR 302(a)(1) ............................................................................................................ 7, 8
CPLR 302(a)(2) ............................................................................................................ 8, 9
CPLR 302(a)(3) ............................................................................................................ 9, 10
Fed. R. Civ. P. 12(b)(2) ................................................................................................ 5, 28
Fed. R. Civ. P. 12(b)(6) .......................................................................................... 5, 27, 28
Fed. R. Civ. P. 8(a) ...................................................................................................... 25
N.Y. Civ. Rights Law § 70-a(1) .............................................................................. 26, 27
N.Y. Civ. Rights Law § 76-A(1) ............................................................................. 26, 27

Defendant Carlos Sanchez Alcazar ("Alcazar" or "Defendant"), by and through his undersigned counsel, respectfully submits this memorandum of law in support of his motion to dismiss the complaint and for an award of attorneys' fees and costs under New York's anti-SLAPP law (the "Motion") against plaintiff Gregory Hilton ("Hilton" or "Plaintiff").

## PRELIMINARY STATEMENT

Hilton's Complaint is jurisdictionally defective and legally baseless. *First*, there is no basis for Alcazar, an Ohio resident, to be subject to this Court's jurisdiction based on statements he made as a corporate representative of Stoked Stock, LLC. Nor does Hilton allege a basis for New York's long-arm statute to apply to Alcazar. *Second*, the Complaint fails to state a claim for relief. Hilton's claims for injurious falsehood, defamation, tortious interference with a contract, tortious interference with a prospective economic advantage, unfair competition, and declaratory judgment/injunction are legally deficient because they rely on vague and conclusory allegations. Hilton also fails to allege, among other things, actionable statements and special damages for his injurious falsehood and defamation claims; a specific third-party contract or economic relationship that was the subject of wrongful interference; or information that was allegedly proprietary and misappropriated. For these reasons, the Complaint must be dismissed.

Alcazar is also entitled to attorneys' fees and costs from Hilton under New York's anti-SLAPP law because the claims are premised upon Alcazar's public statements defending his business and they lack any substantial basis in fact and law.

## FACTUAL BACKGROUND

This factual background is derived from the Complaint, annexed to the Declaration of Melissa Yang dated July 31, 2025 ("Yang Decl."), and the accompanying Affidavit of Carlos Alcazar, sworn to on July 31, 2025 ("Alcazar Aff.") and exhibits annexed thereto.

Hilton and Alcazar are both involved in the sale of footpad sensors for "Onewheel" – a personal transportation device that resembles a skateboard with a large single wheel located in the middle of the board.  (*See* Yang Decl., Ex. 1 (Compl.) ¶¶ 6, 7.)  Alcazar began to sell these footpad sensors in 2022 through Stoked Stock, LLC ("Stoked Stock").  (*Id.* ¶ 13; Alcazar Aff., Ex. 1.)

According to Hilton, he developed "proprietary sensor technology" described as a "system and method of replacing a worn foot sensor array" on electronic rideable devices, including "Onewheel" devices.  (Yang Decl., Ex. 1 ¶ 6.)  On January 24, 2023, Hilton filed a U.S. patent application for this sensor technology.  (*Id.*)  About two weeks later, Hilton notified Alcazar that he had filed a patent application and that Alcazar's "designs would potentially infringe on Plaintiff's intellectual property."  (*Id.* ¶¶ 9, 10.)  Alcazar, who wanted to respect Hilton's intellectual property rights, asked to view Hilton's patent application from February 10, 2023 to August 2023.  (*Id.* ¶¶ 11, 22–24.)  Hilton declined to disclose patent application on confidentiality grounds.  (*Id.* ¶ 11.)

Even though Hilton refused to disclose his "proprietary sensor technology," Alcazar disclosed to Hilton between late 2022 and 2023 "certain sensitive, proprietary information to Plaintiff regarding packaging, product specifications, sensor structure, and market strategy."  (*Id.* ¶ 25.)  Alcazar also described "using foam layers, button-style hex structures, and unique sensor zoning strategies" that are identical or substantially similar to Plaintiff's applied patent system.  (*Id.* ¶ 27.)  Hilton informed Alcazar that, "*The way I get around FM is I have material difference in product construction.*"  (*Id.* (emphasis in original).)  Alcazar then "copied" Hilton's construction.  (*Id.* ¶¶ 26, 27.)

On or about November 14, 2024, Hilton's patent application was published. (*Id.* ¶ 12.) Hilton, through his counsel, then sent a copy of this patent application to Stoked Stock's vendors, including 1WheelParts, and Alcazar as Stoked Stock's representative. (*Id.*; Alcazar Aff. ¶ 6; *see also* Alcazar Aff., Exs. 3, 5.) In the letter to 1WheelParts, Hilton's counsel stated that 1WheelParts is "currently selling a product that is similar to that described in the patent publication" and included a link to a webpage selling Stocked Stock's V4 sensor. (*See* Alcazar Aff., Ex. 2.) Hilton alleges that Alcazar began to market and sell sensors under Stoked Stock that "specifically incorporated proprietary features of Plaintiff's Product" in or about November 2024, even though Hilton did not disclose his patent application until after it was published on or about November 14, 2024. (Yang Decl., Ex. 1 ¶¶ 11, 13.)

On or about November 28, 2024, Alcazar launched a GoFundMe page entitled "Support StokedStock's Fight Against Unfair Claims" to raise funds. (*Id.* ¶ 14.) Hilton alleges that Alcazar accused him on the GoFundMe page of "bullying and harassing him". (*Id.*; *see also* Alcazar Aff., Ex. 3.) Hilton also alleges that in "Facebook community posts and podcast appearances," Alcazar called Hilton a "bad actor" and stated he would seek to "shut him down" and described Hilton's intellectual property enforcement efforts as "unjust and malicious." (*See* Yang Decl., Ex. 1 ¶¶ 8, 15, 20.) Hilton alleges that having a good reputation in this Facebook community was and is critical to the promotion and marketing of his product. (*Id.* ¶ 8.) On "a podcast and elsewhere[,]" Alcazar stated that "*The market is certainly large enough for both of us.*" (*Id.* ¶¶ 15, 30 (emphasis in original).) Hilton takes issue with this statement because he believes Alcazar used his intellectual property to build and sell a competing product while trying to characterize that conduct as "cooperative rather than potentially infringing." (*Id.* ¶ 30.) Hilton does not identify the date(s)

or actual statements made in Alcazar's Facebook posts, nor does he identify the name or date of the podcast or what "elsewhere" constitutes. (*See id.*)

According to Hilton, Alcazar's public statements "triggered a massive wave of Facebook community backlash against Plaintiff which directly led to a *more than 80% drop in Plaintiff's revenue* on the very day Defendant's disparaging posts went live." (*Id.* ¶ 20 (emphasis in original).) Hilton alleges that Alcazar's "social media posts and crowdfunding activity remain publicly accessible and continue to spread misinformation about Plaintiff's patent and character, causing ongoing reputational and financial harm." (*Id.* ¶ 21.) Hilton also contends without elaboration that at other points in time, Alcazar changed his attacks from Hilton to Hilton's business, Exile Extreme Enterprises ("Exile"). (*Id.*)

On July 7, 2025, Hilton commenced this action for injurious falsehood, defamation, tortious interference with a contract, tortious interference with a prospective economic advantage, unfair competition, and declaratory judgment/injunction. (*See generally id*.) Hilton seeks to recover at least $1 million from Alcazar. (*See id.* at WHEREFORE clause.)

Alcazar is a citizen of Ohio. (*Id.* ¶ 2.) Alcazar only sold footpad sensors through his company, Stoked Stock, on its website at www.stokedstock.com. (Alcazar Aff. ¶¶ 4, 9.) Alcazar never lived in New York, he does not own property in New York, he has no mailbox in New York, and he has no agent for service of process in New York. (*Id.* ¶ 10.) The last time Alcazar was in New York in his individual capacity was in 2017 or 2018, even though he did travel to New York for work unrelated to Stoked Stock on November 2, 2023.[1] (*Id.* ¶ 11.) Alcazar was served with the Complaint on July 10. (ECF No. 7.)

---

[1] Stoked Stock does not have any offices, employees, agents for service of process or bank accounts in New York. (Alcazar Aff. ¶ 5.)

## **ARGUMENT**

By his Motion, Alcazar seeks to dismiss the Complaint because the Court lacks personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and, separately, because the Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  In addition to dismissal, Alcazar seeks attorneys' fees and costs against Hilton under New York's anti-SLAPP law because this action, based on his public petition and participation, is baseless.

## I.    THE COURT LACKS PERSONAL JURISDICTION OVER ALCAZAR

The Complaint must be dismissed for lack of personal jurisdiction.  Because this action is based on diversity of citizenship (*id.* ¶ 3), the laws of the State of New York pertaining to jurisdiction apply.  *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

In New York, Hilton bears the burden to establish that jurisdiction exists for each claim asserted against Alcazar.  *Moussaoui v. Bank of Beirut and the Arab Countries*, No. 23-CV-7332, 2024 WL 4615732, at *1 (2d Cir. Oct. 30, 2024); *Jonas*, 116 F. Supp. 3d at 323.  Conclusory statements do not suffice; Hilton must offer "factual specificity" to establish personal jurisdiction. *Moussaoui*, 2024 WL 4615732, at *1; *see also Jonas*, 116 F. Supp. 3d at 323 (stating plaintiff must make "legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.") (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original).)

Hilton asserts that Alcazar is subject to personal jurisdiction under New York's long-arm statute.  (*See* Yang Decl., Ex. 1 ¶ 5 (citing CPLR 302).)  Hilton is mistaken.  No jurisdiction exists because: (a) Alcazar, in his individual capacity, cannot be subject to jurisdiction based on actions taken in his corporate capacity; and (b) Hilton has not pled the basis for long-arm jurisdiction.

### A. Allegations Premised Upon Alcazar's Corporate Capacity Do Not Confer Jurisdiction Over Alcazar in His Personal Capacity

New York courts lack jurisdiction over a defendant in their individual capacity where that individual's only contact with New York was conducted on behalf of a corporate entity. *See Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (N.Y. 1982) (concluding defendant did not subject himself, individually, to jurisdiction in New York based on actions taken on behalf of a company); *Seneca Ins. Co., Inc. v. Boss,* 256 A.D.2d 175, 175 (N.Y. App. Div. 1998) (affirming dismissal lack of personal jurisdiction over Colorado defendant who attended three meetings in New York as an employee of plaintiff's New York office). Here, the Complaint, coupled with the Alcazar Affidavit and documents annexed thereto,[2] confirm that all allegations against Alcazar are based on actions taken in his capacity as a corporate representative of Stoked Stock.

In the Complaint, Hilton takes issue with a GoFundMe page titled "Support StokedStock's Fight against Unfair Claims"– making plain that this page was made on behalf of *Stoked Stock*. (Yang Decl., Ex. 1 ¶ 14.) This is further supported by the content of the GoFundMe page, which describes the history, development, sale of *Stoked Stock's* sensors, and Hilton's outreach to Stoked Stock's vendors. (Alcazar Aff., Ex. 3.) Hilton, for his part, *knew* Alcazar was acting on behalf of Stoked Stock at all relevant times. After his patent was published, Hilton sent a letter *addressed to Stoked Stock* about his "proprietary sensor technology." (*See* Alcazar Aff., Ex. 4.) Hilton's letter included a link to Stoked Stock's website identifying the product that Hilton claims is similar to the sensor described in his patent publication. (*Id.*) Hilton also sent a letter to 1WheelParts, one of Stoked Stock's vendors, about his patent publication (*see* Yang Decl., Ex. 1 ¶ 12), where he also included a link to Stoked Stock's sensor that was being sold on 1WheelParts' website

---

[2] On a motion to dismiss for lack of jurisdiction, courts may consider materials outside the pleadings, including affidavits and other written materials. *See Jonas*, 116 F. Supp. 3d at 323.

(Alcazar Aff., Ex. 2.)  By contrast, the Complaint alleges no conduct directed at New York by Alcazar in his individual capacity.  (*See generally* Yang Decl., Ex. 1.)

Accordingly, jurisdiction over Alcazar in his individual capacity is lacking because all allegations concern actions taken by Alcazar on behalf of Stoked Stock.  *See Warren v. eBay, Inc.*, No. 22-CV-3524, 2024 WL 662594, at *10 (S.D.N.Y. Jan. 8, 2024) ("[Where] an individual is sued in his individual capacity, but only had contact with New York as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction in New York.") (internal quotation marks and citations omitted); *see, e.g., id.* (concluding no specific jurisdiction over defendant Iannone where allegations based on actions taken in corporate capacity); *Outdoor Partners LLC v. Rabbit Hole Interactive Corp.*, No. 13-CV-1797, 2013 WL 6503525, at *3–4 (S.D.N.Y. Dec. 9, 2013) (concluding no specific jurisdiction over individual defendants because *inter alia* the "complaint describes no activities through which defendants transacted business within New York in their individual capacities.")  Thus, Alcazar should be dismissed from this action.

**B.  Hilton Fails to Allege Jurisdiction Based on New York's Long-Arm Statute**

Hilton fails to allege Alcazar is subject to specific jurisdiction under New York's long-arm statute.

i.    The Complaint Lacks Any Factual Allegation That Alcazar Transacted Business in New York

Under CPLR 302(a)(1), a defendant who transacts business in New York or contracts to supply goods or services in New York may be subject to jurisdiction in New York for causes of action arising from that transaction.  To plead this basis for jurisdiction, a plaintiff may not rely on conclusory assertions.  *Paraco Gas Corp. v. Ion Bank*, No. 20-CV-4971, 2021 WL 2810062, at *6 (S.D.N.Y. July 6, 2021) (concluding allegations that defendant marketed and sold banking

products, lent money, accepted deposits and guarantees from New York residents, without details as to where or how defendant markets or sells banking products or provides loans, to be too conclusory); *Liaros v. Vallant,* No. 93-CV-2170(CSH), 1996 WL 88559, at *5 (S.D.N.Y. March 1, 1996) (finding allegation that defendants transacted business in New York, without more, fails to meet CPLR 302(a)(1)).

In the Complaint, Hilton merely parrots the statutory elements of CPLR 302(a)(1), asserting that Alcazar "purposefully directed substantial activities towards consumers [in] New York i.e., transacting business (sales, promotion and marketing of his product)." (Yang Decl., Ex. 1 ¶ 5.) Hilton does not allege *what* business Alcazar has been transacting in New York, *what* goods or services are being sold or provided to consumers in New York, or *what* promotional or marketing activities have been done in New York. (*See generally id.*) Nor has Hilton connected Alcazar's alleged business activities in New York with the claims. *Liaros*, 1996 WL 88559, at *5 (requiring plaintiff to show "some discernible connection between [defendant's] business activities and the present action").

Thus, Hilton has failed to plead a basis for jurisdiction under CPLR 302(a)(1).

    ii.    <u>The Complaint Fails to Plead Any Factual Allegation That Alcazar Committed a Tort in New York</u>

Under CPLR 302(a)(2), a defendant who commits a tort in New York may be subject to jurisdiction in New York. CPLR 302(a)(2) is inapplicable for three independent reasons.

*First*, Hilton does not allege that Alcazar was physically in New York when he committed a tort. (*See generally* Yang Decl., Ex. 1.) In any event, the last time Alcazar was in New York in his individual capacity was in 2017 or 2018, years before the occurrence of events alleged in the Complaint. (Alcazar Aff. ¶ 11.) Under these circumstances, CPLR 302(a)(2) cannot apply. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 29 (2d Cir. 1997) ("To subject non-residents to New

York jurisdiction under § 302(a)(2), the defendant must commit the tort while he or she is physically in New York State."); *see also Adamou v. Cnty. of Spotsylvania, Va.*, No. 12-CV-07789, 2016 WL 1064608, at \*7 (S.D.N.Y. March 14, 2016) (stating plaintiff failed to allege Roe Defendants were ever in New York as required under CPLR 302(a)(2).)

*Second*, Hilton makes no effort to identify the alleged tort committed in New York or connect any New York-based conduct to his claims. *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 730 (S.D.N.Y. 2010) (stating CPLR 302(a)(2) confers personal jurisdiction over a foreign defendant who commits a tort in New York and plaintiff's claim arises from that tortious conduct).

*Third*, CPLR 302(a)(2) cannot serve as the basis for jurisdiction for Hilton's defamation claim. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244–45 (2d Cir. 2007) (stating that CPLR 302(a)(2) and (a)(3) exempt defamation claims from their scope).

### iii. The Complaint Fails to Plead any Tort Committed Outside of New York That Caused Injury in New York

CPLR 302(a)(3) confers jurisdiction over a defendant who commits a tort outside of New York that causes injury to a person in New York if that defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state" or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *See Overseas Media, Inc. v. Skvortsov*, 407 F.Supp.2d 563, 575 (S.D.N.Y. 2006) (stating a sufficient showing of each element of CPLR 302(a)(3) is essential to establish jurisdiction). CPLR 302(a)(3) does not apply.

*First*, Hilton fails to allege *which* tortious act was committed by Alcazar outside of New York, *how* that tortious act caused injury to a person or property in New York, or how that tortious act is connected to the claims asserted against Alcazar. (*See generally* Yang Decl., Ex. 1.) He

9

also fails to allege facts sufficient to show Alcazar "regularly does or solicits business, or engages in any other persistent course of conduct" or "derives substantial revenue from interstate or international commerce" or that he should expect or reasonably expect to be hailed into court in New York.  (*See generally id.*)  Thus, Hilton's allegations are wholly deficient to show CPLR 302(a)(3) applies.  *Shift Markets Grp., Inc. v. Alkemi AI Inc.*, No. 23-CV-03504, 2024 WL 4337451, at *6 (S.D.N.Y. Sept. 27, 2024) (finding as insufficient plaintiff's conclusory allegations about defendant deriving substantial revenue in interstate commerce); *Adamou*, 2016 WL 1064608, at *8 (concluding CPLR 302(a)(3) does not confer jurisdiction over County because plaintiff fails to make fact-specific allegations to support elements of CPLR 302(a)(3)).

*Second*, CPLR 302(a)(3) does not confer jurisdiction over defamation claims.  *Best Van Lines, Inc.*, 490 F.3d at 244; *Legros v. Irving*, 38 A.D.2d 53, 55 (N.Y. App. Div. 1971).

## II.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM FOR RELIEF

On a motion to dismiss for failure to state a claim, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor.  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  This principle, however, does not apply to legal conclusions or "formulaic recitations of the elements of a cause of action."  *McHenry v. Fox News Network*, *LLC*, 510 F. Supp. 3d 51, 65 (S.D.N.Y. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).)

Here, the Complaint must be dismissed because Hilton fails to plausibly plead the elements of each of the six claims asserted.  A chart identifying the elements for each claim that have not been plausibly pled is annexed as Exhibit 2 to the Yang Decl.

### A.  Hilton Fails to State an Injurious Falsehood Claim (Count I)

"The tort of trade libel or injurious falsehood requires the *knowing* publication of false and derogatory *facts* about the plaintiff's *business* of a kind calculated to prevent others from dealing with the plaintiff, to its *demonstrable* detriment." *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 462 (N.Y. App. Div. 2010) (emphasis added).  Moreover, "[s]pecial damages ... are an essential element of ... injurious falsehood ... [and] must be pleaded with sufficient specificity." *DiSanto v. Forsyth*, 258 A.D.2d 497, 498 (N.Y. App. Div. 1999).  Hilton's injurious falsehood claim must be dismissed because he fails to allege: (1) a knowingly false statement of fact; (2) derogatory facts about Exile or its goods or services; or (3) special damages with the requisite particularity.

### i.  Hilton Fails to Allege a Knowingly False Statement of Fact

An injurious falsehood claim "require[s] that the defendant have made a statement of fact that is capable of being proven false, as opposed to a nonactionable opinion." *Iottie Inc. v. HSM Co.*, No. 25-CV-2642, 2025 WL 1905814, at *5 (S.D.N.Y. July 9, 2025).  By contrast, an "expression of opinion is constitutionally protected and cannot serve as the basis for [a] plaintiff's injurious falsehood claim." *Vitro S.A.B. de C.V. v. Aurelius Capital Mgmt., L.P.*, 99 A.D.3d 564, 565 (N.Y. App. Div. 2012); *see also Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 380 (N.Y. 1977) ("[E]ven the erroneous opinion must be protected so that debate on public issues may remain robust and unfettered and concerned individuals may have the necessary freedom to speak their conscience.").

"Whether a particular statement constitutes an opinion or an objective fact is a question of law[.]" *Mann v. Abel*, 10 N.Y.3d 271, 276 (N.Y. 2008).  To distinguish statements of fact from opinion, courts consider three factors:

> (1) whether the specific language in issue has a precise meaning
> which is readily understood; (2) whether the statements are capable
> of being proven true or false; and (3) whether either the full context
> of the communication in which the statement appears or the broader
> social context and surrounding circumstances are such as to signal
> readers or listeners that what is being read or heard is likely to be
> opinion, not fact.

*Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp. 2d 279, 288 (S.D.N.Y. 2006) (quoting *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152 (N.Y. 1993)).

Hilton alleges that Alcazar "falsely stat[ed] that [Hilton] was bullying and harassing him," (Yang Decl., Ex. 1 ¶ 14), referenced Hilton as a "bad actor," "portrayed [Hilton's IP] enforcement efforts as unjust and malicious," and claimed Hilton "stole '[Alcazar's] idea,'" (*id.* ¶ 15). But the terms "bullying," "harassing," "bad," "unjust," and "malicious" lack a sufficiently precise meaning, and none are capable of being proven true or false. *See, e.g.*, *Williams v. Buffalo Public Schs.*, 758 F. App'x 59, 65 (2d Cir. Dec. 12, 2008) (summary order) (statement that plaintiff was a "hanger[] on" not actionable). Likewise, the context of the alleged statements—an online GoFundMe page in which Alcazar was complaining about Exile — clearly signaled that the statements were Alcazar's opinion rather than statements of objective fact. *See Sandals Resorts Int'l Ltd. v. Google, Inc*., 86 A.D.3d 32, 44, (N.Y. App. Div. 2011) ("[R]eaders give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts."); *see also Versaci v. Richie*, 30 A.D.3d 648, 649 (N.Y. App. Div. 2006) (finding statement made on public message board, "a forum where people air concerns about any matter," to be opinion not fact).

Moreover, the alleged statement that Hilton "stole" Alcazar's "idea" is, at most, an earnest opinion about an ongoing intellectual property dispute rather than a statement of objective, provable fact. *See Stonebridge Capital, LLC v. Nomura Int'l PLC*, 24 Misc.3d 1218(A), *6 (N.Y. Sup. Ct. July 6, 2009) ("That there is a real controversy negates the allegation that the declaration

of an Event of Default was 'knowingly' false.").   Indeed, courts have held far more specific allegations of intellectual property violations to be non-actionable opinion.  *See, e.g.*, *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F.Supp.3d 205, 223 (S.D.N.Y. 2023) (holding written reports made to Amazon that plaintiff's products were counterfeit to be non-actionable opinion); *Mount v. Ormand*, No. 91-CV-125, 1991 WL 191228, at *2 (S.D.N.Y. Sept. 18, 1991) (holding statements that certain works attributed to painter were not authentic to be non-actionable opinion).

ii.    <u>Hilton Fails to Allege Statements Directed at the Quality of a Business's Goods or Services</u>

A claim for injurious falsehood "lies where the statement is confined to denigrating the quality of the plaintiff's business' goods or services."  *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).   As a result, courts routinely dismiss injurious falsehood claims that fail to allege disparagement of a business' goods or services.  *See, e.g.*, *id.* at 472 (dismissing injurious falsehood claim where statements questioned company's integrity and business methods rather than its goods or services); *Carey v. Carey*, 74 Misc.3d 1214(A), 2022 WL 571412, at *13–14 (N.Y. Sup. Ct. 2022) (dismissing claim because the "FAC contains no comment on plaintiff's goods or services").

Here, Hilton alleges that Alcazar disparaged *Hilton and his actions* in asserting his intellectual property rights rather than Exile's goods or services.  (*See, e.g.*, Yang Decl., Ex. 1 ¶ 14 (alleging Alcazar "falsely stat[ed] that *Plaintiff* was bullying and harassing him"); *id.* ¶ 15 (alleging Alcazar described *Plaintiff* as a "bad actor" and "*Plaintiff's* … efforts as unjust and malicious"); *id.*  ¶ 17 (alleging Alcazar "publicly disparaged *Plaintiff's* good name"); *id.* ¶ 21 (alleging Alcazar is spreading "misinformation about *Plaintiff's* patent and character") (emphases added).) Similarly insufficient is the allegation that Alcazar falsely claimed Hilton stole "his idea."  *See, e.g.*, *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 260–61 (S.D.N.Y. 2023)

13

(dismissing injurious falsehood claim because alleged false statements that plaintiff converted intellectual property go to general reputation not to quality of goods or services).

Indeed, only one allegation mentions Hilton's business at all (albeit vaguely). (*See* Yang Decl. Ex. 1 ¶ 21 ("At various other points in time, and in addition to disparaging Plaintiff's personal name and reputation, Defendant subsequently changed his attacks to focus on Plaintiff's business Exile Extreme Enterprises, LLC").) But that allegation similarly does not mention any of Exile's *goods or services* and, regardless, the allegation fails to identify the specific statement made about Exile. *See Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 763 (2d Cir. 1990) (affirming dismissal of injurious falsehood claim because plaintiff "fail[ed] to plead adequately the actual words spoken"); *Riddell Sports, Inc. v. Brooks*, 872 F. Supp. 73, 79 (S.D.N.Y. 1995) ("A claim for injurious falsehood must set forth the particular words which caused the alleged injury.").

### iii.    Hilton Fails to Allege Special Damages with Particularity

Hilton also fails to plead special damages with the requisite specificity. Where, as here, "loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) (quoting *Drug Rsch. Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441–42 (N.Y. 1960)). "[G]eneral allegations of lost sales from unidentified lost customers are insufficient." *DiSanto*, 258 A.D.2d at 498.

In the Complaint, Hilton alleges that Alcazar's statements "led to a more than 80% drop in Plaintiff's revenue on the very day Defendant's disparaging posts went live." (Yang Decl., Ex. 1 ¶ 20.) He then speculates that *assuming* Exile's share of the market is 2%, then the amount of lost revenue "*would* amount to damages of over $1.1 million." (*Id.* ¶ 34 (emphasis added).) These allegations fail to plead special damages with the particularity for at least three distinct reasons.

14

*First*, Hilton fails to identify a single lost customer, specify the *actual* (not estimated) total amount of damages, or itemize those damages. *Cf. Fashion Boutique*, 314 F.3d at 59 (noting requirement that "exact damages [be] itemized"). *Second*, Hilton does not explain *how* he calculated his total alleged damages, nor does he allege a factual basis for his estimate.[3] The Court need not accept Hilton's speculation of damages based upon a factually unsupported assumption. *See Vigoda v. DCA Prods. Plus*, 293 A.D.2d 265, 266 (N.Y. App. Div. 2002) (allegation of lost income that was "speculative in amount" insufficient to plead special damages). *Third*, the Complaint does not include any factual allegation causally linking Hilton's alleged $1.1 million in lost sales to Alcazar's alleged statement beyond conclusory conjecture. *See SRW Assocs. v. Bellport Beach Prop. Owners*, 129 A.D.2d 328, 332 (N.Y. App. Div. 1987) ("[S]pecial damages must be proved to be the direct and natural result of the falsehood ... and when the matter is one of pure speculation or conjecture … a cause of action to recover damages for injurious falsehood does not lie[.]").

## B. Hilton Fails to State a Claim for Defamation (Count IV)

To state a claim for defamation under New York law, a plaintiff must allege:

> (1) A written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face).

*Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (citing *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)). Hilton fails to plead an actionable statement of fact, fault, or special damages or per se liability.

---

[3] For example, the Complaint contains no allegation setting forth the cost of Hilton's product, the sales volume, and revenue before and after the alleged disparaging statements, or the alleged drop in revenue on any day *after* the day Alcazar published the allegedly disparaging statements. (*See* Yang Decl., Ex. 1 ¶¶ 20, 33-34.)

i.    Hilton Fails to Plead Alcazar Made a Statement of Fact About Him

Hilton's defamation claim must be dismissed because (1) the alleged defamatory statements made about him on Facebook and podcast appearances are too vague to satisfy basic pleading standards; and (2) the challenged statements made on the GoFundMe page are nonactionable opinions, and not provable facts.

*First*, courts require "each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Biro*, 883 F. Supp. 2d at 456; *see also Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.") (internal quotation marks and citations omitted).

In the defamation count of the Complaint, Hilton vaguely asserts that Alcazar "continually made written or spoken defamatory statements as to the basic integrity of and concerning the Plaintiff" and "said statements were published by Defendant to third party(ies), which directly and/or proximately led to Plaintiff's injury." (Yang Decl., Ex. 1 ¶¶ 52–54.) Elsewhere in the Complaint, Hilton pleads that Alcazar made "specific and public Facebook community posts and podcast appearances" describing Hilton as a bad actor whom he would seek to "shut down" and calling Hilton's intellectual property enforcement efforts as "unjust and malicious" and that Hilton was actually stealing "his idea" and "his prior art." (*Id.* ¶ 15.) Hilton does not allege *which* statements were made on Facebook, podcast appearances, or both. Hilton makes no effort to allege *when* and *to whom* Alcazar made the offending statements; he does not identify the date(s) or content of the Facebook post(s) or who could see them, nor does he identify the name and date of the podcast appearances or where each podcast may be accessed and by whom. (*See generally id.*)

16

Thus, the allegations concerning Facebook and podcast appearances fail to support the defamation claim. *See Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 271 (2d Cir. 1999) (stating that plaintiff's allegation that "something bad" was said about him failed to afford defendant sufficient notice of the complained-of communications); *Djurdjevich v. Flat Rater Movers, Ltd.*, No. 17-cv-261, 2018 WL 1478132, at *8 (S.D.N.Y. March 23, 2018) (dismissing defamation claim for failure to sufficiently allege false statements, who made statements, or when they were made); *see also Lesesne v. Lesesne*, 292 A.D.2d 507, 509 (N.Y. App. Div. 2002) (same).

*Second*, similar to his injurious falsehood claim, Hilton is required to allege Alcazar made false statements of fact about *him* that are capable of being proven false as opposed to nonactionable opinion. *Gross*, 82 N.Y.2d at 152–53 ("Since falsity is a necessary element of a defamation cause of action and only 'facts' are capable of being proven false, 'it follows that only statements alleging facts can be the subject of a defamation action[.]'") (internal citations omitted).

As detailed above, Alcazar's statements on the GoFundMe page are not statements subject to precise meaning or capable of being proven false. (*See,* Section II.A.i, *supra*.) Further, in considering the context of the dispute, Alcazar started the GoFundMe page only after Hilton notified Stoked Stock's vendors that their sale of Stoked Stock sensors were covered by his patent application. (Yang Decl., Ex. 1 ¶¶ 12, 14.) Thus, Alcazar's statements could be construed as his opinion on a bona fide intellectual property dispute. *See Gross*, 82 N.Y.2d at 153 (considering "the full context of the communication in which the statement appears or the broader social context and surrounding circumstances" to determine whether "what is being read or heard is likely to be opinion, not fact.") (internal citations and quotation marks omitted).

17

###### ii.    Hilton Fails to Allege Fault on Part of Alcazar

The defamation claim must also be dismissed because Hilton fails to plead fault.  *Biro*, 883 F. Supp. 2d at 456.  Hilton makes no allegation that Alcazar was negligent or acted with actual malice in making the alleged defamatory statements.  (*See generally* Yang Decl., Ex. 1.)  To the contrary, Hilton's allegations show Alcazar acted without fault because when Alcazar was first told that Stoked Stock's designs may infringe upon Hilton's intellectual property, he asked to see it "stating he respected [Hilton's] intellectual property rights[.]"  (*Id.* ¶¶ 10, 11.)

###### iii.    Hilton Fails to Allege Special Damages or Per Se Liability

As detailed above, Hilton fails to allege special damages.  (*See* Section II.A.iii, *supra*.) Hilton also fails to allege the statements made by Alcazar constitute defamation per se.  *Thai*, 726 F.Supp.2d at 331 (noting that defamation per se statements do not require pleading and proof of special damages).

Defamation per se are statements that tend to injure a plaintiff in his or her trade, business, or profession by imputing "any kind of fraud, dishonesty, misconduct, incapacity, unfitness, or want of any necessary qualification in the exercise thereof." *Kforce, Inc. v. Alden Personnel, Inc.*, 288 F.Supp.2d 513, 517 (S.D.N.Y. 2003) (internal quotation marks and citations omitted).  Here, Hilton fails to allege why statements that he was a "bad actor" and "bullying and harassing" Alcazar or that his enforcement efforts were "unjust and malicious" are incompatible with his ability to sell footpad sensors (as opposed to general reflections of his character).  *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (noting that alleged defamation per se statement must be made with "reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities.") (alteration in original) (internal quotation

marks and citation omitted); *Butler v. Ratner*, 210 A.D.2d 691, 694 (N.Y. App. Div. 1994) (concluding statements that plaintiff "shoved" and "harassed" defendant and that "what he is doing is illegal" did not address plaintiff's ability to practice his profession and were not disparaging of his mental capacity and competence as a lawyer).

### C.  Hilton Fails to State a Tortious Interference with a Contract Claim (Count II)

The tortious interference with an existing contract claim must be dismissed because Hilton fails to plead (1) an existing contract between Hilton and a third party, or (2) a breach of contract by a third party.

"In a contract interference case ... the plaintiff must show the existence of its valid contract with a third party, [the] defendant's knowledge of that contract, defendant's intentional and improper procuring of a breach, and damages." *White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426 (N.Y. 2007).  A claim for tortious interference with a contract will be dismissed where a plaintiff fails to plead or show a breach of an existing, binding agreement.  *See, e.g.*, *Herman & Beinin v. Greenhaus*, 258 A.D.2d 260, 261 (N.Y. App. Div. 1999) ("Since there was no binding contract, plaintiff's claim for tortious interference with contract was properly dismissed."); *Avant Graphics Ltd. v. United Reprographics, Inc.*, 252 A.D.2d 462, 463 (N.Y. App. Div. 1998) (dismissing claim because "plaintiff had no contract with either the Housing Authority or the Department of General Services at the time of the purported interference").

The Complaint lacks any allegation that Hilton or Exile executed a binding contract with a third party or that Alcazar induced a third party to breach any such binding contract.  (*See* Yang Decl., Ex. 1 ¶¶ 40-44.)  Rather, the allegations are confined to an assertion that Alcazar "intentionally interfered with Plaintiff's multiple *potential* contractual/business relationships, without justification therefor."  (*Id.* ¶ 43 (emphasis added).)  But claims of interference with *potential* contractual or business relationships constitute the distinct tort of tortious interference

with prospective contract, business relations, or economic advantage; it does not make out a tortious interference with a contract claim.[4]  *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189–90 (N.Y. 2004) ("*Noonan*") (distinguishing the two torts).

Because the Complaint does not identify any existing, binding contract breached by a third party, the claim for tortious interference with a contract must be dismissed.

### D. Hilton Fails to State a Tortious Interference with a Prospective Economic Advantage Claim (Count III)

To state a claim for tortious interference with a prospective economic advantage, a plaintiff must identify a "specific prospective relationship with the which defendants interfered." *Bus. Networks of N.Y. v. Complete Network Sols.*, 265 A.D.2d 194, 195 (N.Y. App. Div. 1999). Moreover, a viable tortious interference claim must adequately plead that the defendant's alleged interference "was accomplished by 'wrongful means' or that defendant acted for the sole purpose of harming the plaintiff." *Snyder v. Sony Music Entm't*, 252 A.D.2d 294, 299–300 (N.Y. App. Div. 1999); *see also Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y. 1980) (discussing "more demanding requirements to establish liability for interference with prospective contractual relations[.]")  Here, Hilton fails adequately to plead either requirement.

### i.  The Complaint Fails to Identify a Specific Prospective Contract or Relationship with Which Alcazar Has Allegedly Interfered

A tortious interference with a prospective economic advantage claim will be dismissed where, as here, the complaint fails to allege "any specific prospective relationship with which the defendants interfered." *Bus. Networks of N.Y.*, 265 A.D.2d at 195.  Similarly, the claim fails where the complaint contains no allegation from which it can be inferred the defendant "knew about the prospective agreements." *GS Plasticos Limitada v. Bureau Veritas*, 88 A.D.3d 510, 510 (N.Y. App.

---

[4] Hilton's separate claim for tortious interference with prospective economic advantage is discussed below.  (*See* Section II.D, *infra*.)

Div. 2011). "[A]s federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Noonan*, 3 N.Y.3d at 192.

Here, Hilton fails to identify any particular third party with whom he had a prospective contractual or business relation and at whom Alcazar directed his statements. (*See* Yang Decl., Ex. 1 ¶¶ 6–34.) The Complaint alleges only that Alcazar made public statements on his GoFundMe page, Facebook posts, and podcasts directed at a "unique community" and the "consuming public in general." (*Id*. ¶¶ 14–21, 32.) That is insufficient. *See Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 429 (S.D.N.Y. 2008) (Chin, J.) (dismissing tortious interference claim alleging defendant made online statements accusing plaintiff of trademark infringement because "the public and customers at large are far too general to constitute a specific third party for purposes of a tortious interference claim") (internal quotation marks and citation omitted); *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2012) ("Plaintiff has not adequately alleged *specific* business relationships with which Defendant allegedly interfered.") (collecting cases, emphasis in original).

Likewise, Hilton alleges only a decrease in sales resulting from Alcazar's alleged interference with potential customers. (*See* Yang Decl., Ex. 1 ¶ 32.) That is similarly insufficient to state a claim. *See Com. Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 166 F. Supp. 2d 891, 898 (S.D.N.Y. 2001) ("A general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship does not state a claim.") (internal quotations and citations omitted); *McGill v. Parker*, 179 A.D.2d 98, 105 (N.Y. App. Div. 1992) (same). And while the Complaint conclusorily states that "Defendant was aware"

21

of these unspecified potential relationships, (Yang Decl., Ex. 1 ¶ 47), no alleged *fact* allows for such an inference. *See DeMasi v. Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

ii.    <u>Hilton Fails to Allege Wrongful Means or Sole Motivation</u>

Hilton also fails to adequately plead that Alcazar's alleged interference "was accomplished by 'wrongful means' or that [he] acted for the sole purpose of harming the plaintiff." *Snyder*, 252 A.D.2d at 299. To satisfy the "wrongful means" element, a plaintiff must plead conduct that constitutes "a crime or an independent tort," such as physical violence, fraud, misrepresentation, civil suits or criminal prosecutions. *Noonan*, 3 N.Y.3d at 191; *see also NBT Bancorp v. Fleet/Norstar Fin. Grp.*, 87 N.Y.2d 614, 621 (N.Y. 1996) ("Where there has been no breach of an existing contract, but only interference with prospective contract rights, . . . [a] plaintiff must show more culpable conduct on the part of the defendant."). The Complaint does not adequately plead any predicate crime or tort or any other conduct sufficient to satisfy the "wrongful means" requirement. (*See* Yang Decl., Ex. 1 ¶¶ 6–34.)

Hilton also fails to plausibly plead that Alcazar's sole motivation for the alleged interference was a desire to harm him. Courts do not find sole motivation where interference is motivated, even in part, by economic self-interest. *See Noonan*, 3 N.Y.3d at 190 (holding that Carvel "was not acting solely to hurt the franchisees" because its actions constituted "normal economic self-interest"); *Stevens v. Skolnik*, 223 A.D.3d 580, 581 (N.Y. App. Div. 2024) (finding allegations that defendant misappropriated plaintiff's business concept insufficient to plead sole motivation).

Here, Hilton alleges that he and Alcazar sold competing products and that upon Hilton's assertion that Alcazar's products infringed upon his intellectual property rights, Alcazar advised he wanted to respect those rights and sought additional information about the same. (*See, e.g.*, Yang Decl., Ex. 1. ¶ 7 ("Defendant was and is in the same business selling a different version of the same product."); *id.* ¶ 8 (alleging both parties are members of Facebook community where they discuss their respective products "with numerous third parties interested in the products"); *id.* ¶¶ 9–11 (alleging parties discussed their respective intellectual property rights in the products); *id.* ¶ 13 (alleging Alcazar's product incorporated proprietary features of Hilton's product).) The Complaint further alleges that *Hilton* sent a copy of his patent publication notice to *Alcazar's* business partners and that Alcazar complained about this and similar conduct to the Facebook community and on his GoFundMe page. (*See id.* ¶¶ 12, 14-21.) Accordingly, the Complaint makes clear that Alcazar was primarily (if not entirely) motivated by the desire to protect *his* intellectual property from Hilton's attacks directed at *Alcazar's* business partners and customers—such allegations do not adequately plead either wrongful means or sole motivation. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) ("When a defendant has acted with a permissible purpose, such as normal economic self-interest, wrongful means have not been shown ....") (internal quotation marks omitted).

### E.  Hilton Fails to State a Claim for Unfair Competition (Count V)

Hilton asserts a common law unfair competition claim against Alcazar based on a misappropriation theory, alleging that "Defendant used certain proprietary and other information he acquired from Plaintiff." (Yang Decl., Ex. 1 ¶ 57.) An unfair competition claim is "the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth,*

*Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (stating that "plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief" and make "some showing of bad faith")  Hilton fails to allege these elements.

Hilton does not allege what proprietary information was allegedly misappropriated by Alcazar.  *Volvo N.A. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 75 (2d Cir. 1988) (stating plaintiff must allege the property or benefit misappropriated to make out an unfair competition claim); *Ferring B.V. v. Allergan, Inc.*, 4 F. Supp. 3d 612, 629–30 (S.D.N.Y. 2014) (same).  Hilton alleges that he disclosed to Alcazar how he "constructed around [Future Motion's] product" and that Alcazar "then copied this construction, received a Cease and Desist letter as to that copying, and then redesigned the shape of his product, despite said warning."  (Yang Decl., Ex. 1 ¶ 27.)  This allegation fails to sufficiently identify the property that was allegedly misappropriated or why that property was considered proprietary. *Ferring B.V.*, 4 F.Supp.3d at 630 (concluding allegations that defendant misappropriated "confidential, trade secret, proprietary, and privileged information" fails to satisfy pleading standards); *Data Broadcasting Corp. v. Tele-Communications, Inc.*, No. 92-CV-4840, 1992 WL 350624, at *4 n.4 (S.D.N.Y. Nov. 19, 1992) (stating that unfair competition claim was subject to dismissal for failure to "identify specifically what property was misappropriated").

Hilton also fails to allege that purchasers were confused or deceived.  *See Carson Optical Inc. v. eBay Inc.*, 202 F. Supp. 3d 247, 268 (E.D.N.Y. 2016) ("In a traditional misappropriation case, a defendant explicitly misleads the public in some way about the identity of a product or service.") (citing *Shaw v. Time-Life Records*, 38 N.Y.2d 201, 206 (N.Y.1975)); *ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008) (describing unfair competition as "a species of fraud or deceit").

Finally, Hilton has not alleged that Alcazar acted in bad faith. *Compare Jeffrey Milstein, Inc.*, 58 F.3d at 34, *with* Yang Decl., Ex. 1.

For these reasons, the unfair competition claim must be dismissed.

**F.  Hilton Fails to State a Claim for Declaratory Judgment/Injunction (Count VI)**

Finally, Hilton asserts a claim entitled "Declaratory Judgment/Injunction" where he alleges that Alcazar's "conduct continues unabated and continues to significantly adversely affect Plaintiff's business and personal reputation" and that "[a]n injunction and declaratory judgment is necessary in clarifying or settling the legal issues herein and would finalize the controversy and offer relief to Plaintiff."  (Yang Decl., Ex. 1 ¶¶ 62–68.)  Count VI must be dismissed.

Hilton fails to sufficiently allege what "conduct continues unabated" or how that conduct "continues to significantly adversely affect Plaintiff's business and personal reputation." Fed. R. Civ. P. 8(a); *see E&E Co., Ltd. v London Luxury, LLC*, 571 F. Supp. 3d 64, 68 (S.D.N.Y. 2021) (finding defendant failed to state counterclaim for declaratory judgment of non-infringement because factual allegations regarding non-infringement were conclusory).  Nor has he alleged a basis for irreparable harm for injunctive relief.  *Maione v. McDonald*, No. 18-CV-7452, 2024 WL 4289886, at *6 (S.D.N.Y. Sept. 24, 2024) (requiring plaintiff to plausibly allege irreparable harm should injunction be denied and actual success on merits of claim).

Additionally, the request for declaratory judgment also fails because the "conduct" described in the Complaint relates to past conduct, *see Tang Capital Partners, LP v. BRC Inc.*, 661 F. Supp. 3d 48, 78 (S.D.N.Y. 2023), and any "conduct" would, presumably, be addressed in Hilton's other causes of action, rendering Count VI duplicative, *see Optanix, Inc. v. Alorica Inc.*, No. 20-cv-9660, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) ("Courts reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such

circumstances, a declaratory judgment will not serve any useful purpose.") (internal citation and

quotation marks omitted); *In re Methyl Tertiary Butyl Ether (MTBE) Products*, 457 F. Supp. 2d

455, 466–67 (S.D.N.Y. 2006) (dismissing declaratory relief claim as duplicative of other relief

sought in action because declaratory relief "is to afford a new form of relief where needed and not

to furnish a litigant with a second cause of action for determination of identical issues").

## III.    DEFENDANT IS ENTITLED TO ATTORNEYS' FEES AND COSTS UNDER NEW YORK'S ANTI-SLAPP LAW

Upon the dismissal of the Complaint, the Court must also award Alcazar attorneys' fees

and costs under New York's anti-SLAPP law.  *See* N.Y. Civ. Rights Law § 70-a(1).  Section 70-

a(1) states that:

> A defendant in an action involving public petition and participation … may maintain an action, claim, cross claim, or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that … (a) costs and attorney's fees *shall be recovered* upon a demonstration … that the action involving public petition and participation was commenced or continued without substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law.

*Id.* (emphasis added.)

Section 76-A(1)(a) defines "an action involving public petition and participation" as "any

communication in a place open to the public or a public forum in connection with an issue of public

interest" or "any other lawful conduct in furtherance of the exercise of the constitutional right of

free speech in connection with an issue of public interest, or in furtherance of the exercise of the

constitutional right of petition."  *See also* N.Y. Civ. Rights Law § 76-A(1)(d) (requiring "public

interest" to be construed broadly covering "any subject other than a purely private matter");

*Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 29–30 (N.Y. App. Div. 2022) (defining

matters of public interest to include "political, social, or other concern to the community, even

those that do not affect the general population") (internal quotation marks and citation omitted).

This action falls squarely within the scope of New York's anti-SLAPP statute. Alcazar was named as a defendant because he made public statements defending Stoked Stock against Hilton's intellectual property enforcement efforts on a GoFundMe page, Facebook community posts, and podcast appearances. (*See generally* Yang Decl., Ex. 1.) Not only are these forums considered public for purposes of Section 76-A(1)(a), but Alcazar's statements concern Hilton's efforts to extort licensing fees from Stoked Stock and Stoked Stock's vendors based upon the false assertion that its footpad sensors are covered by Hilton's pending patent, which are matters of public interest given the community's interest and reaction to the same.[5]  (*Id.* ¶¶ 14–15, 17–20.) *See Aristocrat Plastic Surgery*, 206 A.D.3d at 30 (noting that business reviews are matters of public interest); *Gillespie v. Kling*, 217 A.D.3d 566, 567 (N.Y. App. Div. 2023) (concluding podcast was a public forum under Section 76-a(1)(a)); *Great Wall Med. P.C. v. Levine*, 74 Misc.3d 1224(A), at *1 (N.Y. Sup. Ct. March 8, 2022) (finding Yelp, ZocDoc, and Facebook to be public forums).

Further, as set forth in Section II, *supra*, Hilton's claims against Alcazar are "without substantial basis in fact and law" because they fail to survive the Fed. R. Civ. P. 12(b)(6) standard and thus, Alcazar is entitled to an award of attorneys' fees and costs. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 185 (S.D.N.Y. 2024) ("[W]hatever *else* the phrase 'without *substantial* basis in fact and law' means, it is certainly triggered by the failure to state a claim.") (emphases in original); *see, e.g., id.* (awarding fees to television commentator under Section 70-a(1) because she succeeded in demonstrating all of plaintiffs' claims for defamation and injurious falsehood fail to state a basis for relief); *Sharp v. Bar Fluid LLC*, 237 A.D.3d 628, 630 (N.Y. App. Div. 2025) (dismissing claims for abuse of process and defamation against third-party defendant for authoring plaintiff's lawsuit and making remarks to community about allegations in lawsuit and remanding

---

[5]  As reflected in the GoFundMe page, Stoked Stock received 61 donations in support of its "Fight against Unfair Claims" raising a total of $2,956.  (Alcazar Aff., Ex. 3.)

for award of attorneys' fees under anti-SLAPP); *Isaly v. Garde*, 83 Misc.3d 379, 395 (N.Y. Sup. Ct. 2024) (granting motion to dismiss defamation action and ordering parties to schedule hearing for attorneys' fees under anti-SLAPP).

## **CONCLUSION**

As stated herein, the Court should grant the Motion and dismiss the Complaint against Alcazar for lack of personal jurisdiction under Rule 12(b)(2) or alternatively, for failure to state a claim under Rule 12(b)(6) and award Alcazar the costs of his attorneys' fees and costs in defending against this action under New York's anti-SLAPP law.

Dated: New York, New York
     July 31, 2025

                    **MELISSA YANG PLLC**

                    By:
                        Melissa Yang
                    136 Madison Avenue, 6th Floor
                    New York, NY 10016
                    Tel: (646) 516-9529
                    myang@melissayangpllc.com

                    *Attorneys for Defendant Carlos Alcazar*

## WORD COUNT CERTIFICATION

Counsel for defendant Carlos Sanchez Alcazar hereby certifies that this memorandum of law contains 8,723 words, excluding the caption, table of contents, table of authorities, and signature block, and therefore complies with the 8,750 word count limit set forth in Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Counsel relied upon the word count feature of Microsoft Word to prepare this Word Count Certification.

Dated: New York, New York
      July 31, 2025

 

MELISSA YANG