UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY HILTON,

Plaintiff,

-against-

CARLOS SANCHEZ ALCAZAR,

Defendant.

25-cv-5548 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Gregory Hilton and defendant Carlos Alcazar both develop and sell replacement footpad sensors for electronic rideable devices (e.g., electric skateboards). Until recently, they were both part of niche online communities that discuss these products and are "critical" to the products' promotion and marketing. Dkt. 17 ¶ 8. After a dispute related to Hilton's prospective patent, Alcazar allegedly started to defame Hilton in the online communities, use Hilton's proprietary information and technology in his own products, and convince people not to buy Hilton's products. *Id.* ¶¶ 9–32. Hilton has sued Alcazar for injurious falsehood, defamation, tortious interference with contract, tortious interference with prospective economic advantage, and unfair competition. He also seeks a declaratory judgment and an injunction.

Alcazar has moved to dismiss the amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), and for failure to state a claim under Rule 12(b)(6). Dkt. 20. Hilton has cross-moved for jurisdictional discovery. Dkt. 26. For the reasons stated below, the 12(b)(2) motion is DENIED, the motion for jurisdictional discovery is DENIED as moot, and the 12(b)(6) motion is GRANTED with leave to amend.

## BACKGROUND

Hilton and Alcazar both sell footpad systems for electric skateboards, hover boards, scooters, and the like, and they were active members of a community on Facebook in which they discussed those products with others who might want to buy them. Dkt. 28-1 ¶¶ 6–8. A good reputation in that community was critical to the successful promotion and marketing of their products. Dkt. 17 ¶ 8.

In early 2023, Hilton filed a patent application for sensor technology to be used in those products and notified Alcazar of his potential infringement. *Id.* ¶¶ 6, 10. Alcazar repeatedly asked to view Hilton's unpublished patent application, claiming that he respected Hilton's intellectual property rights and intended to discuss a license to sell the sensor. *Id.* ¶ 11. But Hilton refused to share his application, citing confidentiality concerns. *Id.* When his patent application was published the following year, Hilton sent a copy to Alcazar. *Id.* ¶ 12.

Under the brand “Stoked Stock,” Alcazar then started to market and sell sensor products that allegedly incorporated proprietary features of Hilton’s product. *Id.* ¶ 13. Hilton and Alcazar “engaged in limited but ultimately unsuccessful discussions over a license for [Alcazar]’s use of [Hilton’s] Product.” *Id.* ¶ 22. So Alcazar launched a GoFundMe fundraiser titled “Support StokedStock’s Fight Against Unfair Claims.” *Id.* ¶ 14. On that webpage, he stated that Hilton “was bullying and harassing him,” and he denied infringement and sought donations to defend against Hilton’s allegations in court. *Id.* ¶ 14 (citing www.gofundme.com/f/support-stokedstocks-fight-against-unfair-claims (last visited September 21, 2026)). In Facebook posts and podcast appearances, Alcazar portrayed Hilton’s intellectual property enforcement efforts as unjust and malicious and said he would try to “shut [Hilton] down.” *Id.* ¶ 15. Alcazar also posted that Hilton offered him a reduced license fee if, in exchange, Alcazar removed his social media posts and stopped selling the potentially infringing sensor. *Id.* ¶ 17. But Alcazar didn’t accept any offer. *Id.* Instead, he continued posting and soliciting donations, which “set off a firestorm of ill will in the specific community,” leading “to a more than 80% drop in [Hilton]’s revenue on the very day [Alcazar]’s disparaging posts went live.” *Id.* ¶¶ 17, 20. In a GoFundMe update post, Alcazar stated that he was selling Hilton’s “V5 sensor” through his brand, denied that he had received the publication notice of Hilton’s pending patent application, and claimed he had been developing a similar sensor since late 2022. *Id.* ¶¶ 18, 19.

Hilton also alleges that “[a]t various other points in time, . . . [Alcazar] subsequently changed his attacks to focus on [Hilton]’s business Exile Extreme Enterprises, LLC.” *Id.* ¶ 21. Hilton then sued.

## LEGAL STANDARDS

!“To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff ‘must make a prima facie showing that jurisdiction exists. Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.’” *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018) (alteration in original) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)). “On a motion to dismiss, [courts] ‘construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor.’” *Oklahoma Firefighters Pension & Ret. Sys. v. Banco Santander (Mexico) S.A. Institucion de Banca Multiple*, 92 F.4th 450, 456 (2d Cir. 2024) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)).

To survive a motion to dismiss brought under Rule 12(b)(6), “a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). “A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.* In reviewing a motion to dismiss, a court “accept[s] all factual allegations as true, and draw[s] all reasonable inferences in the plaintiff’s favor.” *Austin v. Town of Farmington*, 826 F.3d 622, 625 (2d Cir. 2016).

## DISCUSSION

Hilton has made a prima facie showing of personal jurisdiction over Alcazar, so Alcazar's 12(b)(2) motion is denied, and Hilton's motion for jurisdictional discovery is denied as moot.

On the merits, there may be a viable case under the surface, but Hilton's current allegations and arguments are insufficient to survive Alcazar's 12(b)(6) motion. Given the Second Circuit's "preference for resolving disputes on the merits" where possible, *Brien v. Kullman Indus.*, 71 F.3d 1073, 1077 (2d Cir. 1995), the Court will grant Hilton leave to file a second amended complaint.

### I. Alcazar's motion to dismiss for lack of personal jurisdiction is denied

"Typically, specific-jurisdiction analysis proceeds in two steps. First, the court applies the forum's long-arm statute. Second, if the long-arm statute permits the exercise of jurisdiction, the court determines whether that exercise would comport with the Due Process Clause." *Oklahoma Firefighters Pension & Ret. Sys.*, 92 F.4th at 456 (internal citations omitted). The Court addresses step one only, because Alcazar does not separately contest step two.

New York's long-arm statute is Section 302 of the New York Civil Practice Law and Rules ("CPLR"). *See Paraco Gas Corp. v. Ion Bank*, 2021 WL 2810062, at *4 (S.D.N.Y. July 6, 2021). Hilton focuses on CPLR 302(a)(1) and (a)(3), arguing that Alcazar transacted business in New York and committed a tort outside of New York that caused injury in New York. Dkt. 27 at 7–9.

Although Section 302(a)(3) expressly excludes actions for defamation, "Section 302(a)(1) can provide a basis for personal jurisdiction over defamation claims." *79th Grp., Inc. v. Moore*, 2024 WL 36992, at *7 (S.D.N.Y. Jan. 3, 2024). That said, "[i]n defamation cases, New York courts construe 'transacts any business within the state' more narrowly than in other types of litigation." *Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 159, 167 (S.D.N.Y. 2023) (quoting CPLR 302(a)(1)). So a plaintiff must show that: "(1) the defamatory utterance was purposefully directed at New York, as opposed to reaching New York fortuitously; and (2) the defendant transacted other business in New York that was directly connected to the claim asserted." *Tannerite Sports, LLC v. NBCUniversal Media LLC*, 135 F. Supp. 3d 219, 230 (S.D.N.Y. 2015).

At this stage, Hilton's jurisdictional allegations suffice. Through a combination of his amended complaint and affidavit, Hilton has alleged that Alcazar "has purposefully directed substantial activities towards consumers in New York i.e. transacting business (sales, promotion and marketing of his product)," Dkt. 28-1 ¶ 5, and that "[t]hroughout this tight-knit and unique online community, [Alcazar] expressly targeted me and my business in New York through interactive online platforms" and "specifically contacted New York-based vendors and customers, and directed a public campaign intended to cause commercial harm to my business in New York." Dkt. 28 ¶ 8. Hilton asserts that "the reason why I am in this Court is that certain of my New York vendors severed or paused business relationships with me, and customers canceled orders citing Defendant's statements." *Id.* ¶ 11. In other words, Hilton has alleged that Alcazar specifically directed defamatory statements to New York-based vendors and customers, and as a result those customers called off their business dealings with Hilton. That alleged conduct fits squarely within Section 302(a)(1).

And because Hilton has made a prima facie case of jurisdiction for the defamation claim, which is related to his other claims and faces a more demanding test, he has also made that prima facie case for his other claims.

All but one of Alcazar's counterarguments rely on assumptions that Hilton has failed to "allege[] purposeful activity by Alcazar" in New York, that Alcazar never directed allegedly defamatory statements at New York, and that Hilton must identify particular New York vendors or customers. Dkt. 35 at 2–3. Hilton's allegations (discussed above) defeat the first two assumptions. And Alcazar points to no case—nor is the Court aware of one—that requires Hilton to identify particular New York vendors or customers to support personal jurisdiction at this stage. So these counterarguments fail.

The other counterargument—that Hilton has failed to provide "a basis to impute jurisdiction on Alcazar based on Stoked Stock"—also falls flat. Dkt. 35 at 1. First, Alcazar says that the amended complaint "makes no allegations" of an agency relationship between Stoked Stock and Alcazar. *Id.* at 4. But it's reasonable to infer that relationship from the allegation that Alcazar "began marketing and selling sensor products under the brand 'Stoked Stock'" in November 2024. Dkt. 28-1 ¶ 13.

Second, Alcazar says that he "cannot be subject to jurisdiction in New York when Stoked Stock is not subject to jurisdiction in New York." Dkt. 35 at 4. In support, he cites his affidavit, which states that Stoked Stock is domiciled in Ohio and "does not have any offices, employees, agents for service of process, or bank accounts in New York." Dkt. 22 ¶ 4. That suggests that Stoked Stock is not subject to *general* jurisdiction in New York. But Alcazar does not contest that Stoked Stock marketed and sold its products in New York, so *specific* jurisdiction remains on the table—and that's exactly what Hilton alleges here. Alcazar attempts to distinguish cases like *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) and *Interventure 77 Hudson LLC v. Flacon Real Estate Co. LP*, 2014 NY Slip. Op. 32401(U) (N.Y. Sup. Ct. Sept. 8, 2014), on the sole basis that the corporate employers in those cases were subject to jurisdiction in New York, while Stoked Stock isn't. But as just discussed, that argument fails under the current pleading and affidavits.

For these reasons, Alcazar's motion to dismiss for lack of personal jurisdiction is denied.

## II. Hilton's motion for jurisdictional discovery is denied as moot

For the reasons discussed in Section I, Hilton has made a sufficient showing of personal jurisdiction at this stage, so Alcazar's 12(b)(2) motion is denied. Hilton's request for jurisdictional discovery to support his personal-jurisdiction allegations is denied as moot.

## III. Alcazar's motion to dismiss for failure to state a claim is granted, with leave to amend

Hilton has failed to state any claim, so Alcazar's 12(b)(6) motion is granted. That said, at least some of Hilton's claims are potentially viable, so the Court will grant him leave to amend his complaint one more time.

### A. Hilton fails to state a claim for injurious falsehood

"The tort of trade libel or injurious falsehood requires the *knowing* publication of false and derogatory *facts* about the plaintiff's *business* of a kind calculated to prevent others from dealing with the plaintiff, to its *demonstrable* detriment." *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 462 (N.Y. App. Div. 2010) (emphases added). It "requires that the defendant has made a statement of fact that is capable of being proven false, as opposed to a nonactionable opinion." *iOttie Inc. v. HSM Co. Ltd*, 2025 WL 1905814, at *5 (S.D.N.Y. July 9, 2025) (cleaned up). And "[s]pecial damages . . . are an essential element of . . . injurious falsehood . . . [and] must be pleaded with sufficient specificity." *DiSanto v. Forsyth*, 258 A.D.2d 497, 498 (N.Y. App. Div. 1999).

Alcazar says that Hilton has failed to allege a knowing publication of false and derogatory facts; derogatory facts about Exile or its goods or services; and special damages with the requisite particularity. Dkt. 23 at 12. Among other things, he contends that Alcazar's statements are opinions, not statements of fact capable of being proven false. *Id.* at 13.

In response, Hilton cites only a 1988 Second Department case stating the legal standard. He does not engage with any of Alcazar's cited cases. He does not even cite a single paragraph of his amended complaint. And he fails to respond to Alcazar's arguments that the phrases alleged are nonactionable opinions instead of statements of fact. *See Paige v. City of New York*, 2023 WL 3122989, at *2 (S.D.N.Y. Apr. 27, 2023) ("The plaintiff's failure to respond is sufficient to forfeit the plaintiff's argument.").

"[I]t is not this Court's obligation to make a party's arguments for [him]." *DeJesus v. Bon Secours Cmty. Hosp.*, 2026 WL 1662701, at *5 n.5 (S.D.N.Y. June 9, 2026) (quoting *Xiamen ITG Grp. Corp., Ltd. v. Peace Bird Trading Corp.*, 2025 WL 3460317, at *3 (E.D.N.Y. Sep. 12, 2025)). So the motion to dismiss this claim is granted, with leave to amend. Next time around, Hilton should plead any relevant factual statements by which Alcazar impugned the quality of Exile's goods and services, and then he should meaningfully engage with the cases and arguments raised by Alcazar, with citations to specific paragraphs of his operative complaint. Or alternatively, Hilton should drop this claim and focus on the ones that he believes clearly meet the law's requirements.

### B. Hilton fails to state a claim for defamation

"The gravam[e]n of an action alleging defamation is an injury to reputation." *Celle v. Filipino Reporter Enterprises Inc.,* 209 F.3d 163, 177 (2d Cir. 2000). Under New York law, "a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages." *Palin v. New York Times Co.,* 940 F.3d 804, 809 (2d Cir. 2019).

Once again, Hilton's counterarguments are conclusory, contain no citations to his amended complaint, and often appear unaligned with the content of his amended complaint. *Compare* Dkt. 27 at 12 ("Plaintiff specifically alleges where and how those statements were made (Instagram,

Facebook, YouTube, TikTok, Discord, and GoFundMe).”), *with* Dkt. 28-1 (no mention of Instagram, YouTube, or TikTok). Hilton also fails to respond to Alcazar’s arguments that any relevant statements constitute only nonactionable opinions. So the motion to dismiss this claim is granted, with leave to amend. In his second amended complaint, Hilton should include *every* statement he contends is actionable and specify the source of each statement. In response to any future motion to dismiss, Hilton should meaningfully respond to *every* argument that Alcazar makes.

### C. Hilton fails to state a claim for tortious interference with contract

“Under New York law, the elements of tortious interference with contract are (1) ‘the existence of a valid contract between the plaintiff and a third party’; (2) the ‘defendant’s knowledge of the contract’; (3) the ‘defendant’s intentional procurement of the third-party’s breach of the contract without justification’; (4) ‘actual breach of the contract’; and (5) ‘damages resulting therefrom.’” *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996)). “[A] plaintiff must specifically plead the existence of a valid contract and provide some details about its terms and its breach to sustain a claim at the motion to dismiss stage.” *WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.*, 2011 WL 2565284, at *6 (S.D.N.Y. June 22, 2011).

Hilton’s amended complaint lacks any allegation that he or his company executed a binding contract with any third party. Instead, Hilton says that he “had been *attempting* to negotiate contractual/business relationships with multiple third-parties.” Dkt. 28-1 ¶ 41 (emphasis added); *see id.* ¶ 46. Nowhere does he allege that he had a valid contract, let alone provide adequate details about its terms and breach. *See Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*, 80 A.D.3d 453, 454 (N.Y. App. Div. 2011) (concluding plaintiff failed to state claim for tortious interference because “[h]e has not alleged, in nonconclusory language, the essential terms of the parties’ contract, including the specific provisions upon which liability is predicated”). So the motion to dismiss this claim is granted.

That said, Hilton may amend his complaint again, given his declaration suggests that he may have had valid contracts that were breached due to Alcazar’s statements. *See* Dkt. 28 ¶ 11. In the revised complaint, Hilton should identify those contracts, their relevant terms, and the details surrounding their breach.

### D. Hilton fails to state a claim for tortious interference with prospective business advantage

“Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant’s interference caused injury to the relationship.” *Kirch*, 449 F.3d at 400 (internal quotation marks omitted).

Hilton baldly asserts that he had business relationships with two third-party companies, Sticky Feet and The Float Life, and that Alcazar "was aware of th[ose] . . . business relationships." Dkt. 28-1 ¶¶ 46–47. But "a complaint attacked by a Rule 12(b)(6) motion to dismiss . . . requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). So Hilton needs something more.

Hilton has nothing more than conclusory allegations as to Sticky Feet, so he's stuck in place on that front. As to The Float Life, Hilton alleges that its owner told him "that it did not wish to become involved in a dispute between [Hilton] and [Alcazar] over intellectual property rights." Dkt. 28-1 ¶ 47. From this, Hilton alleges that "[t]he only means for The Float Life to have become aware of this dispute, which had become the subject of a lawsuit by [Hilton] against [Alcazar], was for [Alcazar], who had been served with the complaint, to have told The Float Life about the dispute." *Id.*

But those allegations don't create a plausible inference that Alcazar was aware of Hilton and The Float Life's business relationship. *See Twombly*, 550 U.S. at 570 (requiring "facts to state a claim to relief that is plausible," not just "conceivable"). First, there's no suggestion that Alcazar communicated directly with The Float Life, rather than indirectly through one of the posts that "set off a firestorm of ill will in the . . . community." Dkt. 28-1 ¶ 17. Assuming the latter, there's no reasonable basis to infer that Alcazar knew about Hilton's business relationship with The Float Life. Things might be different if Hilton's company was responsible for the lion's share of sales in the market, but Hilton suggests that he had around "2% market capture." *Id.* ¶ 34. And even if Alcazar had told The Float Life about the dispute directly, Hilton doesn't allege that The Float Life told *Alcazar* about its business relationship with Hilton, or why Alcazar might otherwise be aware of that relationship.

In sum, Hilton has failed to allege plausible, non-conclusory facts showing that Alcazar was aware of Hilton's business relationships with Sticky Feet or The Float Life. The Court need not reach any of Alcazar's remaining arguments for dismissal of this claim, but Hilton should make sure he responds to them in any future motion to dismiss. For now, this claim is dismissed with leave to amend.

### E. Hilton fails to state a claim for unfair competition

"The New York Court of Appeals has 'long recognized two theories of common[-]law unfair competition: palming off and misappropriation.'" *Transaero, Inc. v. Chappell*, 2014 WL 1783732, at *11 (E.D.N.Y. May 6, 2014) (quoting *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007)). "'Palming off' is 'the sale of the goods of one manufacturer as those of another.'" *Id.* (quoting *ITC Ltd.*, 9 N.Y.3d at 476)). "The misappropriation theory of unfair competition 'usually concerns the taking and use of the plaintiff's property to compete against the plaintiff[']s own use of the same property.'" *Id.* (quoting *ITC Ltd.*, 9 N.Y.3d at 478)). An "unfair competition claim based on a theory of misappropriation requires proof" that the "defendant misappropriated the plaintiff's labors, skills, expenditures, or good will" and "displayed some element of bad faith in doing so." *Id.* (cleaned up).

Hilton argues that Alcazar "engaged in the bad-faith misappropriation of the fruits of Plaintiff's efforts by infringing on Plaintiff's patent and misusing Plaintiff's name and commercial identity to elevate his own profile." Dkt. 27 at 14. But he identifies no allegation in the amended complaint that describes the proprietary information that Alcazar allegedly misappropriated, or how Alcazar used Hilton's name and commercial identity. Plus, as Alcazar points out, "Hilton has not asserted a patent infringement claim, and the patent was not issued until well after Hilton filed this lawsuit, and Alcazar sold Stoked Stock as a result of this lawsuit so he is no longer in competition with Hilton." Dkt. 35 at 11. So this claim is dismissed, with leave to amend. Next time around, Hilton should make specific and concrete arguments based in his allegations, *see, e.g.*, Dkt. 28-1 ¶¶ 25–27, 59, because the Court will not do that for him. *DeJesus*, 2026 WL 1662701, at *5 n.5.

There's one other point to save time on the next go-around: Alcazar's main objection to this claim is that Hilton has failed to allege likelihood of confusion by the public. But that's "not an essential element in a misappropriation-based unfair competition claim." *Sidney Frank Importing Co., Inc. v. Beam Inc.*, 2014 WL 643696, at *13 (S.D.N.Y. Feb. 14, 2014); *see also Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 198 (2d Cir. 2001) ("An unfair competition claim under New York law [based on a misappropriation theory] is not . . . dependent upon a showing of confusion or deception as to the origin of a product or service."). In the future, Alcazar should respond to Hilton's misappropriation theory for this claim.

### F. Hilton fails to state a claim for declaratory or injunctive relief

Hilton also seeks declaratory and injunctive relief, but that relief is predicated on his underlying claims, which are dismissed with leave to amend. So there is no need to address the propriety of these forms of relief at this juncture.

### G. Hilton is not entitled to expedited discovery to oppose the 12(b)(6) motion

Finally, Hilton requests expedited discovery to oppose Alcazar's 12(b)(6) motion. He offers no legal authority for this relief, and the one case that he relies on was vacated. *See D'Addario v. D'Addario*, 2017 WL 1086772 (D. Conn. Mar. 22, 2017), *vacated*, 901 F.3d 80 (2d Cir. 2018). Given that Hilton has pointed to no operative legal authority to support this request, it is denied.

## CONCLUSION

For the reasons stated above, Alcazar's 12(b)(2) motion is DENIED and his 12(b)(6) motion is GRANTED, but Hilton may file a second amended complaint within 14 days of the date of this Opinion and Order. Hilton's motion to conduct jurisdictional discovery is DENIED as moot. Hilton's request for expedited discovery is DENIED.

In his second amended complaint, Hilton should focus on the claims that he legitimately believes meet the law's requirements, and he should back them up with plausible factual allegations.

The Clerk of Court is respectfully directed to terminate Dkts. 20 and 26.

SO ORDERED.

Dated: September 23, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge